## MILLER ET AL. V. O'BRYAN.

APPEAL: *Can be taken only from final judgments.*
    An appeal can not be taken from an interlocutory order refusing an injunction. It is only from a final judgment or decree that an appeal can be taken to this court.

APPEAL from *Garland* Circuit Court.
Hon. J. M. SMITH, Circuit Judge.

*Clark & Williams*, for appellee:
Decree not final, and not subject to appeal, and does not come within *sec.* 1055 *Gantt's Digest*. The merits were not determined.

Without consent, or stipulation against it, the mortgage itself gave legal title and right of posession. *1 Hilliard on Mort., p.* 168, *sec.* 18.

Decree right upon the merits.

Miller et al. v. O'Bryan.

STATEMENT.

EAKIN, J. On the eleventh of June, 1877, Miller executed to O'Bryan his note for $1,673.40, due the tenth of November, following, with interest from date. To secure this, and supplies to be advanced, he, at the same time, executed to him a mortgage of all his crop of cotton and corn growing on a certain farm, providing, that in case of default of payment, at the time the note should fall due, of it or any other indebtedness, or should he sell or attempt to sell, ship, remove, or otherwise dispose of, any of said crop, meanwhile, without the mortgagee's consent, then, the latter might take charge of the property on demand, and sell so much as might be necessary, for cash, upon two weeks' notice. to be given in a prescribed manner, either party being allowed to bid.

Early in December, Miller and wife filed this bill, charging against O'Bryan, fraud in obtaining the execution of the mortgage, and alleging that the amount expressed in the note was not the real debt. Further, that before the mortgage debt was due, the defendant had, by his agent, taken forcible possession of the land, horses, mules, wagons and machinery of complainants, put hired men upon the place, and had proceeded to gather the crop in a wasteful and destructive manner; that he had disposed of a portion of it, together with some horses, and retained the proceeds; had used, and was using, the provisions upon the place, and had otherwise committed great waste and spoliation, to their great damage; also, that he was threatening to commit further waste, and had levied some sort of pretended process upon a large quantity of the crop, which he threatened to sell to the highest bidder, on the tenth of December.

The relief prayed was that the note and mortgage might be declared fraudulent, and that the property be redeliv-

ered, and that an account be taken of the sales and conversions of property, and damages, and also for a provisional injunction to stop the threatened sale on the tenth of December, and prevent the further removal of property, or any other proceeding under the mortgage. Notice was given of the time when the injunction would be moved, and a large number of affidavits were taken, *pro* and *con*, to be used on the hearing of said motion, all of which appear in the transcript.

The defendant, on the same day, filed his answer, denying all the allegations of fraud, improper interference, or waste. The effect of it all is, that he took possession of the place, and proceeded to manage it and gather the crops, under circumstances which made it proper and necessary, and with the concurrence of complainant, and that he was not committing waste, but managing all things for the best, in the interest of complainant, after his own debt might be paid, and that the expenses incurred were necessary. The details of the history of the transactions, set forth by the answer, are not now of importance. The answer contains also a demurrer, for want of parties, and for insufficiency. To this answer complainants demurred, on the eighth, and also moved to amend their complaint by inserting a prayer for a receiver, to take charge of the property threatened to be sold.

The motion for an interlocutory injunction was heard upon the bill, answer and affidavits, and was refused, from which ruling complainants prayed an appeal, which was granted.

It seems that the sale proceeded, and afterwards complainants moved the court to set aside the same, for divers reasons, set forth in the motion. This motion was also overruled, and from this ruling complainants also prayed

an appeal, which was granted.   Upon these two appeals
the transcript is brought up, and the case now submitted.

OPINION.

Neither the order refusing the interlocutory injunction
nor that overruling the motion to set aside the sale, is final.
Each rested in the sound discretion of the court.   Neither
affected the real merits of the case.   Demurrers are still
pending.   Upon their determination, or upon final hearing
upon the merits, the court may, notwithstanding the action
complained of, dismiss the bill, or cancel the mortgage, or
sustain it, or in either case decree an account and hold
defendant responsible in account for all sums received by
him, as well as damages resulting from improper conduct
with regard to the subject-matter.   What the action of the
court should be, will depend on the rules of practice and
the equities disclosed.   It has, so far, merely determined
that it does not deem it advisable to control the action of
defendant, with regard to the property, at this stage.   It is
only a consideration of danger to complainants.   No rights
are yet adjudicated.

The constitution of 1874 (*Art. VII, sec.* 4), gives this
court appellate jurisdiction, under such restrictions as
may, from time to time, be prescribed by law.   It is com-
petent for the legislature to prescribe the time and mode
of taking appeals, in any reasonable manner, not so impair-
ing the right as substantially to destroy it.   There has been
no subsequent legislation on the subject, but the laws then
in force, consistent with the new constitution, were pre-
served by its provisions.

Under the Code, it had been repeatedly held by this
court, that no appeal could be taken but from *final* judg-
ments of inferior courts.   This resulted from the constitu-
tion of 1868, *Art. VII, sec. 4.*   See cases in *26 Ark., pp. 51,*

*Appeals:*
*Can be ta-*
*ken only*
*from final*
*judgments.*

*95, 468, 662; 27 Ark., 336.* This was not altered in any respects by the amendments of 1871, brought forward in *Gantt's Digest, sec. 1055;* the several clauses of that act being all considered as indicating the remedies which might be afforded, on final appeal, to correct errors which had occurred in interlocutory proceedings. The rule continued to be observed, although in the case of *Hecht v. Hecht, 28 Ark., 92,* it was held that an order might be final and subject to appeal, where it fixed the rights of some of the parties, although the cause might be left pending as to others. As to those whose rights were determined in such manner as not to be again adjudicated in the suit, the judgment assumed a final character. Again we find the rule asserted in *30 Ark., p. 665.* The rule is a wise one, or otherwise chancery suits might be interminable. The Chancellor, in the exercise of the wide and various discretionary powers to preserve property and impose terms on litigants, which are necessary to a complete adjustment of equities, may, it is true, sometimes fail to apply the proper interlocutory remedies, or may apply them unnecessarily, from which loss or injury may result. But this is one of those imperfections incident to all human institutions, and the dangers in this direction, of failure of justice, are far less than those which would be incurred by the delays, the expense, and death or insolvency of litigants, if interlocutory appeals were permissible. This case must stand for further proceedings in the court below, in the position it had when the appeal was granted. Until the court of original jurisdiction has acted upon the merits, we forbear to express any opinion of them.

Dismiss the appeal, that the case may proceed below to final hearing and decree.