McMillan v. Brookfield.

Opinion delivered November 21, 1921.

1. ATTORNEY AND CLIENT—TRANSACTIONS BETWEEN.—An attorney may purchase from his client the results of a suit promoted by him, but the burden is upon the attorney to show the utmost good faith, the absence of undue influence, a fair price, knowledge, intention and freedom of action by the client, and that he gave his client full information and disinterested advice.

2. EQUITY—DUTY TO DO EQUITY.—The maxim, he who seeks equity must do equity, means that, whatever he the nature of the controversy and of the remedy demanded, the court will not give equitable relief to the party seeking it unless he will admit and provide for all the equitable rights, claims and demands of his adversary growing out of or necessarily involved in the subject-matter of the controversy.

3. LIMITATION OF ACTIONS—DISCOVERY OF ADVERSE CLAIM.—A suit by a client to set aside a deed to land given by him to his attorney as security for his fees was not barred where brought within seven years from the time the attorney placed the deed on record, that being the first time that the plaintiff knew that defendant was claiming the land.

4. APPEAL AND ERROR—NECESSITY OF BILL OF EXCEPTIONS.—No bill of exceptions is necessary in chancery cases except where oral testimony has been taken and not written and filed as a deposition in the case, or as part of the record in the cause.

5. APPEAL AND ERROR—BRINGING UP ORAL EVIDENCE IN CHANCERY.—
   Recital in the decree that certain oral testimony should be re-
   duced to writing and filed, coupled with a recital that this had
   been done, and the certificate of the clerk that the transcript
   contains a complete record of all the proceedings, made the oral
   testimony a part of the record.

Appeal from Cross Chancery Court; *A. L. Hutchins,*
Chancellor; reversed.

### STATEMENT OF FACTS.

C. T. McMillan brought this suit in equity against
J. C. Brookfield to set aside a deed to about 14 acres of
land, on the ground that the execution of the deed was ob-
tained through undue influence while the defendant was
attorney for the plaintiff to recover the land from a third
person.     Subsequently Susanna McMillan, the wife of
C. T. McMillan, was permitted to become a party plain-
tiff to the suit.

C. T. McMillan is a colored man.     According to his
testimony, he purchased the land in question from a Mr.
Davis, but was not able to secure a deed from him to the
land.     He employed J. C. Brookfield, an attorney, to get
the land for him.     He agreed to pay Brookfield $185
as his compensation.     McMillan lived on the land when
he first purchased it, but moved away from it several
years before he employed Brookfield to recover it. Brook-
field brought suit for him for the land in 1912, and a de-
cree was rendered in McMillan's favor for the land in
1915.

J. C. Brookfield was a witness for himself.     Ac-
cording to his testimony, C. T. McMillan came to him to
borrow some money, and he refused to lend him any, but
purchased the land in controversy from McMillan for
$20.     McMillan executed to him a warranty deed to the
land on the 1st day of August, 1921.     The consideration
expressed in the deed is "the sum of $1 and other
good and valuable considerations to me paid by J. C.
Brookfield".     Brookfield subsequently brought suit for
the possession of the land in the name of C. T. McMillan.

On cross-examination, he stated that he did not

bring suit in his own name, because he did not want to file the suit and prosecute it in his own name. He admitted that there was nothing in the pleadings to notify the court who was the real party in interest. He placed his deed from McMillan on record soon after the court entered a decree in McMillan's favor for the land. The land was worth about $75 when he purchased it from McMillan. He paid McMillan other sums after the execution of the deed. McMillan got $65 from him before he gave his deposition. Brookfield never got this back.

F. O. Cogbill, a notary public, was a witness for the defendant. He took C. T. McMillan's acknowledgment to the deed in question. McMillan could not write his own name, and Cogbill witnessed his signature. McMillan seemed familiar with the deed, and did not hesitate to sign. The land is worth $100 per acre now, and was worth $150 at the time the deed was executed.

The court found the issues for the defendant, and dismissed, the complaint for want of equity. The plaintiffs have appealed.

*Killough, Lines & Killough,* for appellant.

Appellee has not met the burden of showing that no undue influence was used and that he gave his client all the information and advice as against himself that was necessary in order to enable him to act understandingly. 73 Ark. 575; 87 Vt. 1.

The property in suit was the homestead of appellant, and the court should have so held. It is a question of intent, whether the homestead has been abandoned. 134 Ark. 519; 55 Ark. 55. The absence of the wife and children will not affect the husband's right of homestead. 29 Ark. 280.

The wife did not sign the deed, and the deed purporting to convey the homestead is a nullity. 123 Ark. 189.

*S. W. Ogan,* for appellee.

What purports to be the bill of exceptions is not signed by the trial judge, and therefore is not properly

before the court. As no error is alleged otherwise in the record, the case should be affirmed. C. & M. Dig., §§ 1321, 1323.

No order was made making Susanna McMillan a party to the suit, merely a motion asking that was filed, so she is not properly a party. C. & M. Dig., § 1102.

The relation of attorney and client never existed. Appellee prosecuted the suit in the name of his grantor which he had a right to do. C. & M. Dig., §§ 1498 and 1500.

The land was never impressed with the character of a homestead. When appellee purchased, appellant had neither legal title nor possession, but mere equity. If mistaken in this view, the homestead was abandoned. 21 Cyc. 597; 5 Ky. Law Rep. 422.

There was no present intention to return to the place required to preserve the homestead character. 60 Ark. 262; 21 Cyc. 603. Abandonment is a question of intent. 148 S. W. 245.

A husband may not convey but can abandon a homestead without his wife's consent. 101 Ark. 101.

The record brought up under the *nunc pro tunc* order is not properly identified and has no place in the case. This is so for the further reason that the trial court had lost jurisdiction of the case.

*Killough, Lines & Killough,* in reply.

The decree of the court identifies the testimony brought up in the *nunc pro tunc* order, and is sufficient to bring the evidence before this court. 117 Ark. 221.

This record shows that Susanna McMillan was a party to the suit.

A departure from a homestead for the purpose of business, pleasure or health does not constitute an abandonment. 80 Ark. 249. The loss of the members of one's family does not terminate a homestead right. 71 Ark. 206; 65 Ark. 393.

HART, J. (after stating the facts.) It is well settled in this State that an attorney may purchase from his

client the results of a suit promoted by him, but the burden is upon the attorney to show the most perfect good faith, the absence of undue influence, a fair price, knowledge, intention, and freedom of action by the client, and also that he give his client full information and disinterested advice. *Davis* v. *Webber,* 66 Ark. 190; *Thweatt* v. *Freeman,* 73 Ark. 575; and *Weil* v. *Fineran,* 78 Ark. 87.

Tested by this rule, we think that the deed should be set aside. The consideration recited in the deed is the sum of $1 and other good and valuable considerations. Brookfield admits that he paid McMillan only $20 at that time. He subsequently brought suit for the land in the name of McMillan and prosecuted the suit in his name for three years. Brookfield did not record his deed until after a decree was rendered in favor of McMillan for the land. Brookfield claims that he made other advances to McMillan after the execution of the deed before he gave his testimony in the pending suit for the land. If he had already purchased the land, this was not necessary. His making the advancement is consistent, however, with the theory that he was to have a lien on the land for his services in recovering it.

The fact that Brookfield brought the suit in McMillan's name and prosecuted it to a conclusion in his name, together with the almost nominal price given for it, are facts to be considered in determining whether the deed should be set asid. Indeed, all of the attending circumstances tend to show that the parties intended that the deed should be a mortgage for the security of Brookfield's fee in the prosecution of the suit to recover the land and for any advances he might make McMillan during the progress of the suit.

This suit is in equity, and the court has the right to impose conditions upon the plaintiffs in granting them the relief prayed for. He who seeks equity must do equity, is a favorite maxim. In its broadest sense, it is regarded as the foundation of all equity, and as the source of every doctrine and rule of equity jurisprudence.

Its practical meaning is that, whatever be the nature of the controversy and of the remedy demanded, the court will not give equitable relief to the party seeking it, unless he will admit and provide for all the equitable rights, claims and demands of his adversary growing out of or necessarily involved in the subject-matter of the controversy. 1 Pomeroy's Equity Jurisprudence, (3 Ed.) § 385.

The record shows that McMillan has not paid Brookfield for his services in recovering the land for him, for advances made during the progress of the suit and for the taxes on the land paid by Brookfield.

Upon the remand of the case, the deed from Brookfield to McMillan will be set aside upon the payment by McMillan to him of the amounts due him for his legal services in recovering the land, the advances made by him to McMillan during the progress of the suit, and the amount of taxes on the land paid by him.

Inasmuch as these amounts are not definitely shown by the evidence in the record, both parties, if so advised, will be allowed to take additional testimony to establish the amount of Brookfield's fee for recovering the land, the advances made by him to McMillan and the amount of taxes paid by him. In default of the payment of these amounts by McMillan during the time to be fixed by the court, the land shall be sold under orders of the court for the payment thereof.

The defendant Brookfield has pleaded the statute of limitations. The record discloses that he did not file his deed for record until the 26th day of February, 1915, and the present suit was not brought until the 28th day of September, 1920. McMillan testified that he did not know that Brookfield was claiming the land under the deed until after he had filed it for record. There is no contradiction of his testimony in this respect, and indeed it is corroborated by the fact that Brookfield brought suit to recover the land in the name of McMillan, and did not file his deed for record

until after that suit had been concluded. Hence the plaintiffs are not barred by the statute of limitations.

It is also insisted by counsel for the defendant that the decree should be affirmed because there is no bill of exceptions preserving the evidence taken at the trial. The record shows the entry of a *nunc pro tunc* decree, and that decree recites that the case was heard upon the pleadings which are named and the oral testimony of certain witnesses whose names are set out.

The decree contains a further recital "that the oral testimony of said witnesses be and is ordered to be taken down in shorthand by Miss Mabel Kellogg and by her transcribed and filed with the other papers in the case, which is accordingly done."

No bill of exceptions is necessary in the chancery court except where oral testimony has been taken and not written and filed as a deposition, or as a part of the record in the case. *Lemay* v. *Johnson,* 35 Ark. 225; *Bradley Lumber Co.* v. *Hamilton,* 109 Ark. 1; and *Alston* v. *Zion,* 136 Ark. 376.

In the case of *Bradley Lumber Co.* v. *Hamilton, supra,* the court said:

"The only way of preserving testimony taken orally before the chancery court was to have same reduced to writing at the time and properly identified by the court and filed and made a part of the record by order of the court, or afterward having it reduced to writing and brought into the record by bill of exceptions."

The amended record shows that the oral testimony in the present case was ordered reduced to writing and filed as part of the record. It contains the further recital that this was done. This identifies the testimony and makes it a part of the record, just as if the oral testimony of the witnesses had been depositions and filed in the case.

In *Lenon* v. *Brodie,* 81 Ark. 208, the recital of the decree was, "the depositions of witnesses taken *ore tenus* at the bar of the court and agreed to be filed and used as depositions in the case." The clerk in his

certificate stated that the transcript included the oral evidence. The court held that was sufficient, and that the oral testimony became a part of the record in the case by the agreement of the parties that it should be reduced to writing and filed as depositions in the case. Here the court ordered the testimony to be reduced to writing and filed with the other papers in the case. It recites that this was done.

The record also contains the certificate of the clerk that the transcript contains a complete record of all the proceedings in the chancery court. The recital in the decree that the oral testimony should be reduced to writing and filed with the other papers in the case, coupled with the recital that this had been done, and the certificate of the clerk made the oral testimony a part of the record and no bill of exceptions was necessary.

It follows that the decree will be reversed because the court erred in not setting aside the deed from C. T. McMillan to J. C. Brookfield, and the case will be remanded for further proceedings in accordance with the opinion.