WILLIAM F. SAMPLE *v.* LENA MAE SAMPLE

5-5542                                            466 S. W. 2d 935

Opinion delivered May 17, 1971

*C. E. Blackburn,* for appellant.

*Lightle & Tedder,* for appellee.

JOHN A. FOGLEMAN, Justice. The parties to this appeal separated after 27 years of marriage. They had two children at home—a daughter, Sandra, 18 years of age at the time of the trial, and a son, Billy, 20 years

of age at that time. Both of the children were attending college at the time of the separation and the trial and residing at the family home on an 80-acre farm, which was held by the parties as a tenancy by the entirety.

The wife, appellee herein, sued for an absolute divorce on the ground of indignities to the person. By amendment to her original complaint, she prayed, in the alternative, for separate maintenance. At the time of the final hearing, she abandoned her prayer for absolute divorce, and a decree was entered granting her $350 per month support money, sole possession of the farm and the residence that contained all personalty, and an attorney's fee of $100 and requiring the husband to pay all debts incurred by the parties up to the date of the separation in the amount of $7,096.95. Appellee's complaint had asked that appellant be required to account for the proceeds of cattle sold by him. The final decree relieved him of making an accounting, and allowed him to retain the net proceeds of this sale.

The first point relied upon by appellant for reversal is his contention that appellee should not have been granted relief because she did not come into court with clean hands. He argues that her conduct in abandoning her prayer for absolute divorce and seeking separate maintenance constituted a failure to do equity because it resulted in her being permitted to retain the home and farm in her sole possession, along with the personalty of the parties, rendering it impossible for the court to order a sale of the realty for the discharge of the joint obligations of the parties. Appellant makes this argument in spite of the fact that he filed no counterclaim, failed to answer or otherwise respond to the amendment to appellee's complaint, and made no objection when she abandoned her claim for absolute divorce and proceeded on her suit for separate maintenance. We do not understand appellant's argument in this respect, and find no basis for saying that appellee should not have been granted relief because she came into court with unclean hands or because she failed to do equity. The doctrine of unclean hands means no more than that one, who has defrauded his adversary

in the subject matter of the action, will not be heard to assert a right in equity. *Batesville Truck Line* v. *Martin,* 219 Ark. 603, 243 S. W. 2d 729. The practical meaning of the maxim that "he who seeks equity must do equity" is that, whatever the nature of the remedy sought, the court will not give equitable relief to one seeking it unless he will admit and provide for all of the equitable rights, claims and demands of his adversary growing out of, or necessarily involved in, the subject matter of the controversy. *McMillan* v. *Brookfield,* 150 Ark. 518, 234 S. W. 621. Appellant also asserts that the court abused its discretion in the award of alimony, division of personalty and award of possession of realty. Appellant is totally disabled, and received $726 per month from social security, the Veterans' Administration and disability insurance. Each of the two children receives an additional $126 per month from social security and the Veterans' Administration because of their father's disability. Both children were in the first year of college. Appellee testified that appellant sold 13 head of cattle for $1,000 on the day of the separation. She claimed an interest in the cattle, and testified that they were worth more than twice as much as the purchase price he received. There is an FHA loan of $5,200 on the farm, payable in installments of $40 a month, which Mrs. Sample claims to have been making in the past. She testified that she had worked during most of their married life and received exceptionally high earnings, which she said she applied to payment of bills and the family living cost. Each of the parties now has one of the two family automobiles. Appellant testified that the parties owned their furniture, had four horses, 10 or 12 saddles and equipment, all valued at a minimum of $700, in addition to farm and garden tools, a tractor and wagon, which he valued at $500. He valued sporting goods equipment at $550, tools at $300, antique glassware at $1,000. He also valued a demolished Dodge truck at $300, and testified that there were 500 bales of hay in the barn. Mrs. Sample testified that appellant's income was nontaxable. She listed monthly financial needs of $600. She stated that the minimum she could live on was between $350 and $400. She has income of $60 per month as pay for caring for two houses on

Eden Isle. Although she testified that she was physically unable to work, it seems that her children assist her in this employment. Mrs. Sample testified that she had undergone chronic mastitis surgery on her breast and was under the care of the University Medical Center where she received outpatient treatment for which she paid $7.50 per call. She was scheduled to return for a checkup in May, 1971. She had also consulted Dr. McClanahan of Heber Springs, and had seen four other doctors.

Dr. McClanahan examined Mrs. Sample on October 16, 1969, and found a tumor of the right breast, a rupture and a tumor of the uterus. He referred her to the University of Arkansas Medical Center at her request. He examined her again on June 6, 1970, and found the same condition. He stated that Mrs. Sample had a fibroma or rupture of the birth canal, technically called a cystocele and rectocele, which he said would cause discomfort in the pelvis and difficulty in controlling urination and bowel movements. Dr. McClanahan said this was a condition that would develop over a period of years. Mr. Sample testified that Mrs. Sample had had her same physical condition for 23 years of their married life.

Sample claims that he cannot live on the balance of his income. He pays $80 rent for an apartment and $85 as a monthly car payment. He is unable to prepare his meals and eats out a great deal of the time. He stated that he did not claim any of the property to be wholly his except for six guns, various hand tools, some personal things and 14 liquor bottles. He testified that the residence is in need of maintenance and upkeep, and the barn is in bad condition. Mrs. Sample had been allowed $250 per month temporary alimony. She, her daughter and Mr. Sample's mother all testified that this amount proved inadequate and that Mrs. Sample had to borrow money to pay living expenses and even then some bills went unpaid. On the other hand, Sample testified that appellee was extravagant and indulged her children's wants extravagantly.

In view of the testimony as to appellee's physical condition, her needs and the necessity for maintaining a home for the children of the parties while they are attending school, together with evidence as to Mrs. Sample's contributions to the acquisition of property by the parties, the absence of any testimony as to income to be anticipated from the farm, one-half of which is woodland, and admitted needs for maintenance on the residence and barn, we are unable to say that the chancellor abused his discretion or that the seemingly liberal allowances made were excessive under existing conditions.

The decree is affirmed.