THWEATT *v.* FREEMAN.

Opinion delivered January 14, 1905.

1. ATTORNEY AND CLIENT—CONTRACTS BETWEEN.—Under the rule that an attorney will not be permitted to enjoy the fruits of an improvident bargain made with his client if he failed to make a fair disclosure of the circumstances at the time of purchase, where an attorney, jointly with another not an innocent purchaser, purchased, through

a third party, the estate of his client, worth $5,000, for $2,000, without disclosing that he had already collected $928 for the estate, and without disclosing the fact that he was one of the purchasers, the sale will be cancelled.  (Page 578.)

2.  SAME—DUTY TO MAKE DISCLOSURE.—The fact that a client required his attorney to seek his fees, in the event of a sale of the client's property, out of a price to be obtained in excess of a sum named, did not absolve the attorney from his duty to make full disclosure of his connection with the purchase, but merely placed a limitation upon the price.  (Page 582.)

Appeal from Prairie Chancery Court.

JOHN M. ELLIOTT, Chancellor.

Affirmed.

On February 14, 1900, H. V. Freeman, executor of the will of O. H. Platt, filed a bill in equity against J. G. Thweatt, R. H. Sanders and S. A. Apple, alleging:  That Thweatt is a lawyer and real estate dealer at Devall's Bluff, and that he was on September 18, 1897, acting as agent and attorney of plaintiff. That as such attorney Thweatt had charge of the estate of O. H. Platt, consisting of notes and a judgment aggregating $3,556.96, and certain lands which were described and were alleged to be worth $1,200.  That previous to the above date Thweatt had collected on the notes and judgment the sum of $2,259, and held notes for $426, which he afterwards collected.  That, instead of reporting said collections to plaintiff and remitting the same, said Thweatt retained them, and concealed the fact from plaintiff. That plaintiff urged Thweatt to make said collections, but to no avail.  That in February, 1897, Thweatt wrote plaintiff to find out what he would take for the entire Platt estate in Arkansas, saying that an unnamed "moneyed man" had given him to understand that he would pay $2,000 cash for the entire estate.  That plaintiff would not agree to take that amount, thinking the estate was worth more, but asked Thweatt to make a statement of the assets of said estate, to enable plaintiff to put a price on the property.  That on September 18, 1897, Thweatt made out a sworn itemized statement, by which it appeared that the entire

estate was worth only $2,000, but made no report of collections then in his hands. That plaintiff, being wholly unable to realize anything on said notes and judgment, and relying upon Thweatt's statement, agreed to take $2,000 for said property if the purchaser would pay Thweatt's commissions. That Thweatt said that the purchaser would pay his commissions, and sent a deed conveying the property to S. A. Apple, who, Thweatt said, was the purchaser. That Apple was a stenographer in Thweatt's office, who knew all the circumstances. That Apple afterwards, at Thweatt's request, conveyed all said property to Thweatt and Sanders. · That Apple paid nothing on the purchase, but acted as purchaser merely to accommodate Thweatt. That plaintiff is informed that Sanders afterwards conveyed said property to Thweatt, but no deed is of record. That, at the time Thweatt made the statement as to the value of said property, it was worth $5,000, instead of $2,000, as represented by him. That, by concealing the collections and misrepresenting the value of the property, Thweatt deprived plaintiff of property worth $3,000. The bill concludes with a prayer that the deeds from plaintiff to Apple, from Apple to Thweatt and Sanders, and from Sanders to Thweatt (if there be such a deed) be cancelled; that plaintiff recover from Thweatt all amounts collected by him, less reasonable commissions and fees, and for other relief.

It was proved that, at the time Thweatt made a statement that the estate was worth only $2,000, he had $928 in his hands which he had collected for the estate, but failed to disclose to plaintiff. He also failed to disclose that Apple was purchasing for the benefit of himself and Sanders.

The chancellor found that, at the time· of the conveyance of the property and assets of the estate of O. H. Platt, deceased, to defendant Apple, defendant J. G. Thweatt was the agent and attorney for plaintiff; that the defendant Apple was not a *bona fide* purchaser of said assets for value, but that the said conveyances were taken in his name for convenience and for the benefit of defendants Thweatt and Sanders, who were not innocent purchasers for value. It was therefore decreed that said Thweatt and Sanders reconvey to plaintiff all of the real estate described in the complaint, "within thirty days from

this date; and if said deed be not made within said time, this decree shall operate as a reconveyance and cancellation of the deeds and conveyances set out in the complaint or any other right of title defendants may have acquired or conveyed prior to the expiration of said thirty days; and, in so far as these defendants or any one claiming under or through them are concerned, the title to said property is quieted in plaintiff; and that the plaintiff have and recover of and from the defendant J. G. Thweatt the sum he collected for said estate and held in trust for the plaintiff, amounting to $4,215.96, less his fees and credits which he is entitled to, amounting to $3,207.59, leaving a balance of $1,008.37, for which execution may issue.

"It is further ordered and decreed that the defendant R. H. Sanders cancel and satisfy the sum of $493 of the principal of the note and mortgage given by J. M. McClintock to him for $653.25 on the 30th day of July, 1898, said satisfaction or cancellation to be made of the date said note and mortgage was given, this amount being included in the above credit of $3,207.59, and said amount is to be paid by the said J. M. McClintock to the plaintiff as part of the said assets, and that defendant pay the costs of this suit."

Other facts necessary to its understanding are stated in the opinion. Defendants Thweatt and Sanders have appealed.

*J. H. Harrod,* for appellants.

The rule of law governing the relation of attorney and client in matters of purchase from the client is that the purchase is valid if made in good faith. Story, Agency, § 212; Story, Eq. Jur., § § 310-313.

*J. M. McClintock* and *Eugene Lankford,* for appellee.

McCulloch, J. It is not difficult to find in the books a plain declaration of the duty owing by an attorney to his client and the principles governing the dealings between them. "It is obvious," says Judge Story, "that this relation must give rise to great confidence between the parties, and to very strong influences over the actions and rights and interests of the client. The situation of an attorney or solicitor puts it in his power

to avail himself, not only of the necessities of his client, but of his good nature, liberality and credulity, to obtain advantages, bargains, and gratuities. Hence the law, with a wise providence, not only watches over all the transactions of parties in this predicament, but it often interposes to declare transactions void which between other persons would be held unobjectionable. It does not so much consider the bearing or hardship of its doctrine upon particular cases, as it does the importance of preventing a general public mischief which may be brought about by means secret and inaccessible to judicial scrutiny from the dangerous influences arising from the confidential relation of the parties. By establishing the principle that while the relation of client and attorney subsists in its full vigor the latter shall derive no benefit to himself from the contracts, or bounty or other negotiations of the former, it supersedes the necessity of any inquiry into the particular means, extent, and exertion of influence in a given case." Story's Eq. Jur. § 310.

The same learned author says further: (Section 311) "On the one hand, it is not necessary to establish that there has been fraud or imposition upon the client; and, on the other hand, it is not necessarily void throughout, *ipso facto*. But the burthen of establishing its perfect fairness, adequacy, and equity is thrown upon the attorney, upon the general rule that he who bargains in a matter of advantage with a person placing a confidence in him is bound to show that a reasonable use has been made of that confidence; a rule applying equally to all persons standing in confidential relations with each other."

The doctrine is more concisely stated by a modern author as follows: "Equity regards the relation of attorney and client much in the same light as that of guardian and ward, and will relieve a client from hard bargains or from any undue advantage secured over him by his attorney. And the client, in order to secure such relief, is not bound to show that there has been any imposition or fraud, nor is the transaction necessarily void; but if it is a transaction in which the relation between the parties exerted, or might reasonably have exerted, any influence in the attorney's favor, then the burden of establishing its perfect fairness is thrown upon the attorney." 3 Am. & Eng. Enc. Law, 333; *Felton* v. *Le Breton,* 92 Cal. 457; *Ross* v.

*Payson,* 160 Ill. 349; *Yeamans* v. *James,* 27 Kan. 195; *Dunn* v. *Record,* 63 Me. 17; *Tancre* v. *Reynolds,* 35 Minn. 476; *Dunn* v. *Dunn,* 42 N. J. Eq. 431; *Thomas* v. *Turner,* 87 Va. 1.

In the last case cited it is said: "It is the duty of an attorney to give his client the benefit of his best judgment, advice and exertion, and it would be a just reproach to the law if he were permitted to bring his own personal interest into conflict with that duty by securing a benefit to himself through the influence which the relation implies. All transactions between the parties, to be upheld in a court of equity, must be *uberrima fides,* and the *onus* is on the attorney to show, not only that no undue influence was used, or advantage taken, but that he gave his client all the information and advice as against himself that was necessary to enable him to act understandingly. He must show, in other words, (1) that the transaction was perfectly fair; (2) that it was entered into by the client freely; and (3) that it was entered into with such a full understanding of the nature and extent of his rights as to enable the client to thoroughly comprehend the scope and effect of it. Or, as Lord Eldon tersely puts it in the famous case of *Huguenin* v. *Baseley,* 14 Ves. 273, the transaction must be shown to have been the 'pure, voluntary, and well-understood act' of the client's mind, otherwise a court of equity will undo it as having been unduly obtained."

The principle is discussed, and the same rule announced, though applicable to transactions between persons standing in relations of trust and confidence other than that of attorney and client, in the decisions of this court in *Million* v. *Taylor,* 38 Ark. 428; *Hindman* v. *O'Connor,* 54 Ark. 627; *Imboden* v. *Hunter,* 23 Ark. 622; *West* v. *Waddill,* 33 Ark. 575; and *Clements* v. *Cates,* 49 Ark. 242.

The facts of this case call, with especial force, we think, for an application of the rule announced by these authorities; for it is shown by the proof that by reason of confidential relation the judgment of the attorney was particularly relied upon by the client. The plaintiff, who, as executor of the estate of O. H. Platt, occupied, himself, a trust relation toward the owners of the property, resided in a distant city, and had never seen the lands or debtors of the estate. He took the pains to inquire

of an attorney in a neighboring town as to the standing and reliability of Mr. Thweatt, and, being advised that he was an attorney of high standing in whose judgment and integrity he could rely, he made no effort to obtain information from other sources as to the value of the property, but depended altogether upon his attorney. His letters show, too, that he informed Mr. Thweatt that he relied entirely upon his judgment. It is true, he required Thweatt to obtain and send the affidavits of other parties in the locality as to the value of the property; but it is evident that the affidavits were required only for the purpose of exhibiting to the heirs and to the court in Chicago upon which authority to make the sale might be obtained, and that the conclusion of the executor himself as to the value of the property and the propriety of making the sale was based upon the statement of Thweatt.

It cannot be denied that the bargain, on the part of the executor, was an improvident one. He sold to his attorney, for $2,000 in cash and the fees of the attorney, property shown to be of the value of nearly $5,000. The land is conceded to have been worth as much as $600, and the chancellor found that appellants have realized $4,215.96 out of the notes and judgment, of which the sum of $928 had been collected by the attorney at the time of the sale. And it is plain from the evidence here that the property was easily worth the above amount, and that there was no reason or necessity for the executor disposing of the same at such sacrifice. The reports of Mr. Thweatt, made to his clients by letters written from time to time before the negotiations for sale arose, which reports were entirely fair, and should be here mentioned to his credit, show that he regarded the assets as being perfectly good. Then why should the executor have disposed of them at such a low figure? Manifestly, for the reason that he was discouraged by the failure of Thweatt to make the collection in the face of his repeated promises to do so, and because of the tentative offer of the unnamed "moneyed man" to pay as much as $2,000 for the entire property, supplemented by the statement of Thweatt's opinion to the effect that that sum was a fair price for same.

There is one feature of the conduct of appellant Thweatt toward his client in purchasing the property which makes it

imperative, under the doctrine herein announced, that a court of equity should grant relief from such an improvident sale, viz., his failure to disclose at the time he purchased the property the facts that he was one of the purchasers, and that he had already collected $928 on the outstanding notes due the estate. It is highly probable that the executor would have changed his estimate of the value of the property if he had known that so large a sum had already been collected, and might have sought other sources of information as to the value of the property if he had known that his attorney, on whose judgment he relied, was seeking to become one of the purchasers. Mr. Thweatt in his testimony says his reason for not mentioning the collection was that he thought his expenses and fees in the whole transaction would have amounted to more than the collection, and for that reason it was unimportant to mention it; and that when he made his estimates of value and reported them to his client, he had no thought of becoming the purchaser. We do not say that he was not perfectly honest in his belief that his fees and expenses would amount to as much as the sum collected, nor that he does not speak the truth when he says that he had no idea of purchasing when he made the estimates of value; still, the executor was entitled to information as to both these facts, and it was the duty of his attorney to disclose them to him. When he fell short that far in his duty as agent and attorney, he cannot be permitted in a court of equity to hold and enjoy the fruits of an improvident bargain made with him by his client. By this omission he failed to come up to the standard demanded by the law in measuring the full duty owing by attorney to client, and must suffer the consequences of having his bargain annulled.

We need not find, and do not find, that there was any actual fraud or intentional imposition in the transaction, but the result is the same.

Learned counsel for appellant, while conceding the full force of the ordinary doctrine herein announced which governs the relation of attorney and client and transactions between them, urges that the same does not apply to the sale and purchase in question, for the reason that the executor expressed a willingness to accept the price named by Thweatt, $2,000, but

required the latter to get his fees and expenses from the purchaser. We do not think, however, that this phase of the relation between the parties altered in any degree the duty owing by the attorney to his client to secure the best price obtainable, and to disclose all the facts within his knowledge concerning the property and his connection with the transaction. Counsel assumes that the executor, by his attitude concerning the price and the fees of the attorney, absolved the latter from his ordinary duties and obligation, and permitted him to get all the advantages he could in a price over $2,000. In this he is mistaken.

In the case of *Boysen* v. *Robertson,* 70 Ark. 56, where an owner of land authorized her agent to sell at a net price of $3 per acre and get his commissions from the purchaser, it was contended in behalf of the agent that he was at liberty to retain as commission all of the price in excess of that named by the principal, but the court held to the contrary, saying: "This was only a limitation upon his power to sell. It was still his duty to sell the land for the highest price obtainable, and to account to Mrs. Jones for the proceeds, less a compensation not greater than the excess of the purchase money over $3 per acre net, and at the same time not exceeding a reasonable compensation." We think the same rule applies in this case. The executor, in requiring his attorney to seek his fees, in the event of a sale, out of a price to be obtained in excess of the one named, did not absolve the attorney from any of his duties, but merely placed a limitation upon the price at which he could sell.

It is also contended that, even if the decree is correct as to Thweatt, it is erroneous as to Sanders. We think, however, that under the proof appellant Sanders had full knowledge of the relation between his co-purchaser, Thweatt and the executor, and, in view of the gross inadequacy in the price paid, he is equally chargeable with the imperfection in the sale, and as to him, too, it should be rescinded.

The court erred in decreeing a cancellation and discharge of the mortgage executed by McClintock to Sanders, but appellants cannot complain of this, inasmuch as the court, in its finding as to the amount due from appellants of the fund collected on the notes and judgment, credited them with the sum

of $493 embraced in the McClintock mortgage, and but for this credit would have included it in the amount ordered to be paid to the plaintiff by appellants.

The decree is therefore affirmed.