BOND *v.* MARLIN.

4-5721 136 S. W. 2d 460

Opinion delivered January 8, 1940.

*Mahony & Yocum* and *Saye & Saye,* for appellants.
*C. W. McKay* and *Neill C. Marsh,* for appellee.

HUMPHREYS, J. Appellants, J. B. Bond and W. M. Coats, were the plaintiffs in the lower court, and appellee, Tom Marlin, was defendant, and appellant, Gertrude Doyle, was an intervener.

The abstract of the pleadings appearing in appellants' brief is correct and clearly presents the issues involved in the litigation and, rather than attempt to abbreviate the pleadings ourselves, we adopt and incorporate them in this opinion as a concise statement of the issues involved. They are as follows:

On February 1, 1938, appellants, J. B. Bond and W. M. Coats, filed suit in the Union chancery court against appellee, Tom Marlin. Bond and Coats alleged that on the 4th day of August, 1926, they and one Frank R. Foster purchased from Phillip Garrett and others an undivided five-twelfths interest in and to the oil, gas and other minerals in and under and that might be produced from the west half of the northwest quarter (W½ NW¼), section twenty-four (24), township eighteen (18) south, range seventeen (17) west, Union county, Arkansas; that about that time they entered into an agreement with Frank R. Foster by which they agreed to and did furnish Foster money with which to purchase certain mineral interests in Union county, Arkansas, including the interest above described; that under said agreement Foster was authorized to purchase min-

erals and resell the same, or any part thereof; that when sufficient money had been realized from sales of mineral interests to reimburse Bond and Coats for money advanced to Foster to purchase such interests, then Foster was to have an undivided one-third interest in the minerals and mineral rights not disposed of, and that Foster purchased the mineral interest above described for $833.30, which was paid by Bond and Coats.

Plaintiffs further alleged that the defendant, Marlin, at that time was acting as attorney for the firm of Bond & Evans, which was composed of J. B. Bond and Tex Evans; that he was also representing Foster in a number of transactions; that for the protection of plaintiffs and to facilitate the acquisition and sale of said mineral interests, title thereto was taken in Marlin's name, and that the deed which was executed by Phillip Garrett and others was made to Marlin, and was filed for record in the office of the circuit clerk and recorder of Union county on the 19th day of August, 1926, and is duly recorded in record book 233, page 469 of said record.

Plaintiffs further alleged that Foster, acting for himself and plaintiffs, sold one-half of the above described mineral interest, being an undivided five-twenty-fourths interest in the oil, gas and other minerals in the land described above, to W. D. Wingfield, and that the defendant Marlin, pursuant to instructions from Foster and the plaintiffs, executed and delivered a deed to Wingfield conveying said interest to him.

Plaintiffs alleged that, after the sale to Wingfield, title to the remaining undivided five-twenty-fourths interest in the minerals in the land described above remained in the defendant Marlin, who at all times has held same in trust for the benefit of plaintiffs and Foster, their heirs, devisees or assigns; that plaintiffs at this time are uninformed as to the ownership of the undivided one-third of said five-twenty-fourths interest which did belong to Foster, but they allege that the other two-thirds of said interest is at this time held in trust by Marlin for their benefit, and that at all times until recently the defendant has never disputed plain-

tiffs' title to said mineral interest, but on the contrary has at all times recognized their interest therein, and admitted that he held the same in trust for their benefit.

It is further alleged in the complaint that recent development for oil and gas in the vicinity of the land above described has caused said minerals and mineral rights to greatly enhance in value; that plaintiffs could, were they in a position to convey title thereto, obtain a substantial consideration for said mineral rights; that a few days before the filing of suit plaintiffs requested the defendant to execute to them a conveyance of said mineral rights so that they would be in a position to sell, handle and dispose of their property as they might see fit and proper, but the defendant refused to convey said interest to them, denied that they owned any interest in said minerals and informed them that he claimed the absolute title thereto.

Plaintiffs prayed for a decree of the court adjudging that the defendant holds said minerals and mineral rights as trustee for their benefit, for an order directing the defendant to execute proper conveyance to plaintiffs, and, upon his failure to do so, for a decree divesting title to said mineral interest out of the defendant and vesting the same in plaintiffs. They prayed for costs and general relief. The complaint was duly verified by plaintiff Coats.

The defendant, Marlin, in his answer admitted that Foster purchased said mineral interest from Phillip Garrett and others, and that the title thereto was taken in defendant's name, but he denied that plaintiffs had any interest therein. He admits that he conveyed one-half of said mineral interest to W. D. Wingfield at the instance of Frank R. Foster, but he denied that he did so at the instance of the plaintiffs and denied that he had any knowledge or information that plaintiffs had any interest in said transaction or in the minerals conveyed by Phillip Garrett and others to him. He admits that after the sale to Wingfield the title to the remaining undivided five-twenty-fourths interest in the minerals in said land remained in him, but denies that he has at

all times held same in trust for plaintiffs and Foster, and denies that he ever held two-thirds of said interest in trust for the benefit of the plaintiffs. He denies that he has ever recognized plaintiffs' interest in said minerals, or ever admitted that he held same in trust for their benefit.

Marlin alleges that on or about the 4th day of August, 1926, Foster purchased from Garrett and others an undivided five-twelfths interest in and to the oil, gas and other minerals in, on and under and that might be produced from the tract of land described above, and that said interest was deeded to Marlin by Garrett and others. He states that at the time said interest was purchased he did not know or have any information that plaintiffs, or either of them, claimed any interest in the minerals, and that he has had no such information since that time; that a short time after he deeded an undivided five-twenty-fourths interest in said minerals to W. D. Wingfield, Foster, being indebted to him, and in consideration of the settlement of the indebtedness that was due him, agreed for Marlin to keep the remaining five-twenty-fourths interest in said minerals as his own property, and that he has at all times since then held the same as his own property; that during said period of time, plaintiffs never intimated or said anything to him about their being the owners of the property or having any interest therein until recent development for oil and gas in the vicinity of said land; that he has never held said interest in said minerals in trust for plaintiffs and has never known or recognized anyone in said transaction other than Foster; that he is entitled to have his title to an undivided five-twenty-fourths interest in the minerals in and under said land quieted and confirmed in him as against plaintiffs. He prayed that plaintiffs be denied the relief sought in their complaint; that he be decreed to be the owner of an undivided five-twenty-fourths interest in the minerals in and under said land; that his title thereto be quieted and confirmed as against plaintiffs, and that he have judgment for his costs and all other proper relief.

The appellant Gertrude Doyle intervened in the case and alleged that she was formerly Gertrude Foster, wife of Frank Foster; that Frank Foster died on the 7th day of June, 1933, leaving a will in which he bequeathed and devised to the intervener all of his property, real and personal and wheresoever situated; that she is the sole devisee in said will and was the executrix of the estate of Frank R. Foster, which she has fully administered and has been discharged as executrix. She alleged that at the time of his death Frank R. Foster was the owner of an undivided one-third of five-twenty-fourths interest in and to the oil, gas and other minerals in the 80-acre tract of land described in plaintiffs' complaint, and that upon the death of Foster she became the owner of said interest. She adopted the allegations of the complaint and prayed for a decree declaring the defendant Marlin as her trustee, holding an undivided one-third of five-twenty-fourths interest in the oil, gas and other minerals in said land for her benefit; otherwise she adopted the prayer of the plaintiffs, and prayed for costs and general relief.

Marlin answered Mrs. Doyle's intervention and denied that Foster was the owner of one-third of said mineral interest at the time of his death; denied that the property was acquired in the manner set forth in the original complaint; denied that the intervener became the owner of said interest upon the death of Frank Foster. He reiterated the allegations of his answer to the complaint to the effect that Foster had given the interest to him in settlement of Foster's indebtedness to him, and that he acquired the interest from Foster without notice of any outstanding equity. He prayed that the intervention be dismissed for want of equity.

The cause was submitted to the court upon the pleadings and evidence adduced by the respective parties resulting in the following finding and decree: ,

"The court made its decree on the 29th day of May, 1939, and found that the five-twenty-fourths interest in all of the oil, gas and other minerals, on, in and under the

west half of the northwest quarter of section twenty-four, township eighteen south, range seventeen west, was acquired by the defendant, Tom Marlin, by purchase from Frank R. Foster, for and in consideration of the sum of $200, which was received by Frank R. Foster, J. B. Bond and W. M. Coats, and that the defendant, Tom Marlin, is now the owner of the said five-twenty-fourths interest of all the oil, gas and other minerals, on, in and under said lands. The court dismissed the complaint of plaintiffs J. B. Bond and W. M. Coats and the intervention of the intervener Gertrude Doyle for want of equity, and quieted the title to five-twenty-fourths interest in the oil, gas and other minerals on, in and under the above described tract of land in the defendant, Tom Marlin, and gave him judgment against the plaintiffs and the intervener for his costs. Plaintiffs and the intervener excepted to the court's decree and prayed an appeal to this court, which was granted.''

The evidence is voluminous and after a careful reading and analysis of same we have concluded that the weight of the evidence establishes the fact that five-twelfths of the oil, gas and other minerals in, under and upon the 80-acre tract of land referred to as the Garrett land was paid for by check of Bond & Evans and that the title was taken in the name of the defendant, Tom Marlin, who held the same as trustee for Foster, Bond and Coats; that soon after the purchase of the property Tom Marlin, at the instance of Foster and for himself, Coats and Bond sold one-half of the minerals which had been purchased from Garrett to W. D. Wingfield leaving title to five twenty-fourths of oil, gas and other minerals in said tract of land in Tom Marlin as trustee for the three parties; that at the time the purchase was made from Garrett by Bond, Coats and Foster as well as other lands and leases they purchased, Marsh & Marlin were employed as attorneys for Coats, Bond and Foster to examine the titles to all of the purchases they made and that the title to this 80-acre tract as well as the other lands purchased was examined by an attorney by the name of John Carroll at the instance, request and con-

sent of Marsh & Marlin; that at the time of these transactions the relationship of attorney and client existed between Marlin on one part and Foster, Coats and Bond on the other; that no transfer or conveyance of said five twenty-fourths interest in said land was ever made by Marlin to Foster, Coats and Bond or either of them and that Marlin still holds same in trust for them.

It is true that Marlin claims Foster told him he might have the five twenty-fourths interest for an antecedent debt of $200 which Foster owed him and claims that books kept by him showed that to be the fact, but we cannot tell from the examination of the books definitely what transaction the entries therein relate to.

It is conceded that Marlin had no interest in the land unless he obtained same from Foster under an oral statement on the part of Foster, testified to by Marlin, that Marlin might have the lands for an indebtedness Foster owed him.

There are a number of circumstances in the record which indicate that Marlin knew that Coats and Bond were interested in this and the other purchases made by Foster and that if he did not actually know it, there was ample to put him on notice and inquiry from which he could have readily ascertained the interest Bond and Coats did own in the property. In fact, Marlin admits that he knew Coats had an interest, but that he did not know Bond had an interest in the lands which were acquired and conveyed to him in trust.

This court said in the case of *Swaim* v. *Martin,* 158 Ark. 469, 251 S. W. 26, that: "The procuring of the conveyance of the Carlisle property from Martin to Swaim was during the existence of the relation of attorney and client. In such cases the burden is upon the attorney of proving the fairness and equity of the transaction and the adequacy of the consideration, and upon his failure to make such proof a court of equity will treat the case as one of constructive fraud. The reason is that the relation of client and attorney is one of trust and confidence, requiring a high degree of fidelity and

good faith. *Thweatt* v. *Freeman,* 73 Ark. 575, 84 S. W. 720, and *McMillan* v. *Brookfield,* 150 Ark. 518, 234 S. W. 621."

Under this authority we do not think Marlin has discharged the burden which rested upon him.

.The decree of the lower court is reversed and the case remanded to that court, with instructions to enter a decree granting the prayers of the complaint and intervention.