David GREGORY et al *v.*
James S. MOOSE, Jr. et al

CA 79-83                               590 S.W. 2d 665

Opinion delivered September 26, 1979
[Supplemental opinion on denial of petition
for rehearing November 7, 1979.]
[Petition for review denied November 13, 1979.]*
and released for publication November 16, 1979

*Moose v. Gregory, 267 Ark. 86, 590 S.W. 2d 662.

*Edmund M. Massey,* for appellants.

*Edward Gordon,* for appellees.

M. STEELE HAYS, Judge. After undergoing surgery for a malignant brain tumor in February of 1975, William H. Bruce, Jr., trustee of the Elizabeth E. Howard trust, decided to sell 397 acres of farm land belonging to the trust. He contacted a trusted advisor and an attorney, through whom the lands were appraised by a local real estate man as having a fair market value on March 17, 1975, of $108,000. The lands were offered for sale to Mr. James S. Moose, appellee and a beneficiary of the trust, and to Mr. Arthur Ormond, both of whom declined to buy. The lands were also offered to appellants, David and Lavona Gregory, who entered into an agreement to purchase the lands on April 1, 1975, at the appraised price.

Before the sale could be consummated, the trustee died on May 9, 1975, and a petition was filed by appellants to ap-

point a successor trustee to fulfill the provisions of the agreement. The appellees responded with allegations that the agreement was void for the reason that the trustee was mentally incompetent and was unduly influenced, and that the sale price was "far less" than the value of the lands. Appellees cross-petitioned, joining David and Lavona Gregory as parties. The case evoked voluminous filings and issues, but those pertaining to the agreement were tried in August of 1978, as a result of which the Chancellor found that the trustee was mentally competent on April 1, 1975, and was not acting under undue influence; further, the Chancellor found that the sale constituted a breach of trust by reason of an inadequate price and inadequate notice and that a sale of the lands in bulk was not in the best interest of the estate. The Gregorys bring this appeal asserting three points of error: that the holding of the trial court that the trustee obtained an inadequate price is against the preponderance of the evidence; that inadequate notice was not an issue before the court; and that the holding that the sale of scattered lands in bulk was not in the best interest of the estate was not an issue before the court. Appellants contend on the second and third points that by so holding, the Chancellor, in effect, altered the trust instrument.

Much of appellees' supplemental abstract and arguments relate to the issue of the mental competence of the trustee at the time of the agreement of sale and whether he was acting under undue influence. While we think it was entirely fitting for the appellees to abstract and cite this evidence; nevertheless, no appeal was taken from the holding of the Chancellor that Mr. Bruce was mentally competent and not subject to undue influence at the time the agreement of sale was entered into, and for the purposes of this opinion we take as settled and conclusive that the trustee was competent. We cannot do otherwise.

We shall first consider the finding of the Chancellor that the trustee breached his trust by selling the trust lands for $108,000. The trustee's power to sell is derived from the following provision of the will:

. . . the trustee is empowered at his discretion to sell any

part or all of the estate, and for said purposes the absolute fee simple title thereto is hereby vested in said Trustee in Trust, and shall be absolutely binding upon all the beneficiaries named herein, and their descendents, and such conveyance shall vest an absolute title in the purchaser.

It would be difficult to conceive of language by a settlor creating, in any stronger terms, an unqualified power to sell trust property and rendering that decision absolutely binding upon the beneficiaries. The word "absolute" is defined by Webster as marked by freedom from restraint or control by any governing or commanding agent or instrumentality; also, marked by extreme concentration of complete power and jurisdiction. The word absolute, or absolutely, is employed three separate times by the settlor in the pertinent portions of the will within the same paragraph, indeed, within the same sentence.

In fact, the depth of the unrestricted power intended to be invested in the Trustee by the settlor is evidenced and emphasized by the fact that during the life of the first trustee, Mrs. George Evan, the power to sell was withheld, giving emphasis to the fact that the succeeding trustee was given that power. Also, the broadness of the trustee's power is indicated by the wording of the will itself:

(a) the Trustee is empowered *at his discretion,* to sell,
(b) any part or all of the estate,
(c) the *absolute* fee simple title thereto is hereby vested in said Trustee in Trust,
(d) and shall be *absolutely binding* upon all the beneficiaries named herein,
(e) and such conveyance shall vest an *absolute title* to the purchaser.

We conclude from the wording used that the settlor intended to repose the broadest power possible under the law in the trustee and to intend the beneficiaries to be bound by the trustee's decision. Thus, the issues presented by this appeal must be judged in the light of that rather clear intent of the settlor. Where a settlor has manifested such an intention, the

law recognizes the investment of such power and while it cannot be said that the exercise thereof is unlimited, it does, at best, approach the same wide latitude that an owner-settlor could exercise in the handling of his own affairs. The repose of confidence by one person in another to a given end stand in apposition in the law of trusts, so much so that originally only individuals, as opposed to corporations, banking institutions, etc., were considered competent to serve as trustees on the theory that a corporate entity, being impersonal, could not possess the confidence that was the concommitant of trusteeship. We think a reading of Mrs. Howard's will will demonstrate, that such confidence in her grandson, William M. Bruce, Jr., was consistent with her intent.

We find the law to be that a trustee holding power to sell under language used in this case has discretion not only as to whether or not to sell the trust property but as to the mode and terms of the sale as well. Before a sale will be cancelled for inadequate price, the price must be "gross inadequate" (*Jarvis* v. *Boatmen's National Bank of St. Louis*, 478 S.W.2d 266 (Mo. 1972), or "unreasonably low" (*Wilmington Trust Company* v. *Coulter*, 200 A.2d 441 (Del. 1964) ), evidence by "bad faith" (90 C.J.S. 455), or so low as to "shock the conscience of the court" (76 Am. Jur. 2d 694; *Clark* v. *Trust Company*, 100 U.S. 149).

Applying those concepts to the facts before us, it is immediately apparent that there is nothing in the record that suggests that the price was "unreasonably low" or "grossly inadequate." The appellee's position in the case rests almost entirely on an opinion by a real estate appraiser made more than three years after the agreement was entered into. But, how can it be said that one opinion has total reliability and another does not? Also, merely because one appraisal is higher, does it follow that the other is unreasonably low? The appraisal of Mr. Martin dated March 17, 1975, appears to be thorough and detailed in all respects, and it has the advantage of time. Mr. Martin resided in the county, and his appraisal cited seven sales he considered in arriving at his opinion of $108,000. The testimony of other witnesses, all farmers familiar with the trust lands, strengthens the credibility of the Martin appraisal. Nor can we ignore the fact

that the appraisal on which appellees rely gave no weight to several factors that seem clearly to have affected the market price of farm lands in the area, i.e., whether the lands were protected in the levee; to what extent the unprotected lands were subject to flooding; the fact that the trust lands were separated in four parcels; and the relatively low income yield. We believe these factors clearly affected the marketability of these lands and that the appraisal in 1978 was tainted by their omission.

The law recognizes that the actions of a trustee are to be judged in the light of conditions which prevailed at the time he elected to act, and not on the basis of an appraisal separated by several years in time from the questioned transaction. *Belcher* v. *Birmingham Trust National Bank*, 348 F.Supp. 61. In *Coulter, supra*, the court discusses the responsibilities of the trustee:

> In Cook's Trust Estate it was laid down that, generally speaking, a Trustee's duty to his trust and to his beneficiaries in administering the trust is to exercise the care and skill a man of ordinary prudence would exercise in dealing with his own property in the light of the situation existing at the time. The conduct of the Trustee is not to be judged by hindsight knowledge of subsequently developed facts and circumstances.

Mr. Bruce was required to exercise that degree of skill and care as a man of ordinary prudence would exercise in selling his own property. *Jarvis, supra*. We are satisfied that he met that test. We agree with the trial court that he acted in some haste and no doubt his own circumstances contributed to that urgency. But the haste was not so great that he omitted the steps that give approbation to his actions, i.e., obtaining an appraisal and then holding to the appraised price. We perceive this to be the course that an ordinary prudent man would follow once he had made a decision to sell lands of his own. Had the trustee failed to obtain an appraisal from someone qualified to give a dependable opinion, or, having obtained one, failed to adhere to it, his actions, even under the trust language, would be difficult to justify; but he failed in neither regard.

It is noteworthy that the lands were offered to appellee, Mr. Moose, and he elected not to buy. Certainly, he was under no obligation to do so, but his motivation is clear — it was not the price that troubled him, but the very act of selling, as he stood to gain significantly if a sale could be averted until after Mr. Bruce's death.

Appellee cites us to six decisions containing black letter law relative to the duty of fiduciary to obtain the best price possible when selling trust property.[1] But a careful reading of each decision is illumninating when the facts and the holding are compared to the case before us. The decisions actually support the counterpoint, as in some instances the sale by the trustee, though perhaps criticized, was upheld by the court.

In *Jarvis, supra,* a trustee sold a number of parcels of trust property for $19,933 without a current appraisal, without advertising, without consulting an outside real estate broker and without negotiating as to price. The beneficiaries sought to invalidate the sale for the reason of inadequate price and offered testimony that in the upper ranges, the lands had a value of approximately $200,000. The court held that the price was not grossly inadequate and upheld the sale.

The *Lockwood* case has marked similarities to the case at bar. In *Lockwood,* the court upheld the sale of 600 acres near Disneyworld for $225,000, notwithstanding that the trustee's own appraisal was higher ($240,000) and without competitive bidding. The objectors offered appraisals ranging from $500,000 to $1,000,000. The court held that the price was not "unreasonably low" and that the objectors had not shown that *at the time of sale* the price was unreasonable. The court referred to the objectors appraisals as "unpersuasive" for the reason that they were *made nine months to a year after the sale was consummated.*

In *Whatley, supra,* the court set aside, as it should have, a

---

[1] *Lockwood* v. *O.T.B. Corporation,* 305 A.2d 636 (Del. Ch. 1973); *Pennsylvania Company* v. *Wilmington Trust Company,* 40 Del. Ch. 567, 186 A.2d 751 (1962); *Wilmington Trust Company* v. *Coulter,* DV Del. Ch. 548, 200 A.2d 441 (1964); *Whatley* v. *Wood,* 157 Colo. 552, 404 P.2d 537 (1965); *Rippey* v. *Denver National Bank,* 273 F.Supp. 718 (1967); *Jarvis* v. *Boatmen's National Bank of St. Louis,* 478 S.W.2d 266 (Mo. 1972).

sale as "grossly inadequate" of mineral interests for $150 by a trustee who had no knowledge of the value, which was worth between $30,000 and $75,000. The court recited the rule that a trustee must determine the fair value of a trust property before selling.

*Coulter, supra* and *Pennsylvania Company, supra,* arise from the same set of facts wherein the court surcharged the trustee bank with loss to the trust estate by reason of a sale of railroad stock by a trustee because the trustee knew that another buyer was willing to pay a "much higher price" ($133 per share as opposed to $99 per share) and would have taken all of the shares rather than only 52 per cent, leaving the trust holding only a locked-in minority position.

Similarly, in *Rippey, supra,* the trustee was surcharged with loss to the trust because of a sale of 17,000 shares of stock in the *Denver Post* for $300 per share when the trustee knew another prospect, anxious to gain control of the *Post,* would pay $500 per share.

The case before us bears no resemblance to the factual situations in *Rippey, Coulter,* or *Pennsylvania Company.*

Next, the appellee argues that the trustee, Mr. Bruce, was guilty of self-dealing, citing a number of Arkansas decisions on the point.[2] There is no question but that self-dealing is a breach of trust and the law will not permit a trustee to deal with trust property to his own advantage and to the detriment of the beneficiaries. But that is not the case in the matter before us. The cases cited in appellee's brief on this point deal with instances of a trustee, or quasi-trustee, acquiring trust property in his own name, or in the name of another to his own benefit, or profiting in an improper way in the handling of trust assets. In every case, the trustee was guilty of conduct which was either dishonest, or fraudulent, or intentionally detrimental to one or more beneficiaries. Quite clearly, we do not have that element before us. Mr.

---

[2]*Hindman v. O'Connor,* 54 Ark. 627, 16 S.W. 1052; *Hardy v. Hardy,* 217 Ark. 296, 230 S.W.2d 6 (1950); *McHugh v. Jeffries,* 207 Ark. 890, 183 S.W.2d 309 (1944); *Selig v. Morrison,* 230 Ark. 216, 321 S.W.2d 769; *Alexander v. Alexander,* 262 Ark. 612, 561 S.W.2d 59 (1978).

Bruce gained, obviously, from the sale. But that eventuality was plainly contemplated by the provisions of the Howard will and Mrs. Howard could not have been unmindful of that when her will was made. Mr. Bruce was both a trustee and a beneficiary by design of the settlor, and that duality does not invalidate the sale. It is perfectly permissible for a trustee to also be a beneficiary of the trust, even though a certian conflict of interest undeniably results. Restatement of Trusts, §99.

Turning to appellant's points two and three, it is enough to say that these issues were not raised by either the pleadings or the proof and should not have been relied upon by the Chancellor. *Evans v. United States Anthracite Coal Company,* 180 Ark. 578, 21 S.W.2d 952 (1929); *Abbate Brothers, Inc.* v. *City of Chicago,* 142 N.E.2d 691; *Ex Parte Wren,* 308 P.2d 329 (Cal.); *Armstrong Clark Company* v. *Lyons,* 366 F.2d 206.

There was no testimony that a greater price would have been obtained by a sale in bulk or by wider notice, and such evidence would be essential to invalidate a sale. Clearly, the terms of the will contemplated a sale in bulk or in separate transactions at the discretion of the trustee, as he was empowered to sell all or any part of the trust lands. Where the trustee is authorized to sell trust assets, it is within his discretion as to whether to sell in parcels or in bulk. Bogert on Trusts, § 745; *In Re Ibelli's Will,* 181 N.Y. S. 2d 913.

In conclusion, it is presumed that a trustee has acted in good faith and the burden of proof rests upon those who question his actions and seek to establish a breach of trust. *Jarvis, supra; First National Bank of Kansas City* v. *Hyde,* 363 S.W.2d 647 (Mo.). We find that the appellees failed to meet this burden and the case is reversed and remanded for entry of a decree consistent with this opinion.

### Supplemental Opinion on Denial of Rehearing

PER CURIAM. Appellees in Petition for Rehearing assert that the opinion reversing this appeal contains a provision

which incorrectly states the law to be that it is presumed that a trustee had acted in good faith and that the burden of proof rests upon those who question his actions, relying on *Jarvis* v. *Boatmen's National Bank*, 478 S.W. 2d 266 (Mo. 1972) and *First National Bank of Kansas City* v. *Hyde*, 363 S.W. 2d 647 (Mo.). Appellees cite *Alexander* v. *Alexander*, 262 Ark. 612, 561 S.W. 2d 59 (1978), and decisions cited therein.

The cases on which petitioners rely do contain general statements of law that are correct, but on examination are distinguishable on the facts from the case decided. In *Bond* v. *Marlin*, 199 Ark. 806, 136 S.W. 2d 460 (1940), the issue involved an attorney-client relationship, and the court held that that relationship carried such a duty that the burden was upon the attorney to show the fairness and equity of the transaction to his client. In *Alexander*, the trustee exceeded the powers given her under the trust to the extent that the court said she showed a "total absence of good faith."

The burden of proving the gross inadequacy of the purchase price here was upon the appellees.