Berchie Marion McCOLLUM and Charles Miles McCollum *v.*
Calvin McCOLLUM, et al.

96-1301                                        946 S.W.2d 181

Supreme Court of Arkansas
Opinion delivered May 27, 1997
[Petition for rehearing denied July 7, 1997.]

*Norman M. Smith*, for appellants.

*J. W. Green*, for appellees.

Tom Glaze, Justice. This case involves the interpretation of a testamentary trust. On January 29, 1985, Lester McCollum died testate with his wife, Gertie, a son, appellant Berchie McCollum, and a daughter, appellee Earnestine Owen, named as co-executors of his will. In addition to Gertie, Berchie, and Earnestine, Lester was survived by two other children, Charles McCollum and appellee Calvin McCollum.

In his will, Lester established the Lester Marion McCollum Marital Trust, and its main asset was a 400-acre farm located in Arkansas County. Lester's widow, Gertie, was named both the trustee and the sole beneficiary of the Marital Trust. In addition to receiving all the statutory powers of a trustee under Act 153 of 1961, now Ark. Code Ann. §§ 28-69-301—304 (1987 and Supp. 1995), Gertie was given title to the farm with the right to distribute to herself all of the net income of the trust and the absolute right to determine whether the farm should be sold. Gertie was also given the authority to appoint by her own will the entire remaining principal, free of the Marital Trust or any other trust.

Lester's will further provided that if Gertie failed to survive him or failed to appoint the balance of the trust property or if any of her appointments failed, the balance of the property from the

Marital Trust would become property of the Lester Marion McCollum Family Trust with Earnestine and Berchie named as co-trustees. Under the Family Trust, Lester's surviving children or their children or unmarried spouse became contingent remaindermen.[1]

The dispute in this case arises from events beginning on July 3, 1989, when Gertie executed and delivered a trustee's deed, conveying the farm to Calvin and Earnestine as tenants in common for $400,000. Calvin and Earnestine gave Gertie four $100,000 promissory notes, two of which were executed by Calvin and two by Earnestine. On the same date, Calvin and his wife together and Earnestine executed and delivered to Gertie mortgages to secure payment of their respective notes with installment payments to begin on July 3, 1990. Earnestine's mortgage and the trustee's deed were subsequently amended to replace Earnestine with the Allen Robert Owen, Jr. Family Trust.

On April 29, 1993, Gertie executed her will in which she memorialized the fact that she had previously forgiven Calvin and the Owen trust one $100,000 note each. Further, she executed on the same date an assignment of mortgage and note to transfer to herself, individually, the remaining notes from Calvin and the Owen trust with accompanying mortgages. Additionally, Gertie executed release deeds to each Calvin and the Owen trust by which Gertie forgave any and all remaining indebtedness created by their respective promissory notes and mortgages. These documents were filed of record on May 4, 1993.

Gertie died on August 18, 1994, and in her will, Gertie appointed any remaining notes and indebtedness owed to the Marital Trust to Calvin and the Owen trust, should the four notes be determined still in existence and enforceable. Berchie filed a petition to contest Gertie's will in probate court, but he later dismissed it with prejudice on November 2, 1995.

On February 7, 1996, Berchie filed the present action in chancery court against appellees Calvin, Calvin's wife, Earnestine

---

[1] Both Lester's son, Charles, and Charles's son died. Appellant Charles Miles McCollum is Lester's great-grandson and Charles's grandson.

and Karolyn Owen as trustees of the Owen trust, and the Owen trust. In his complaint, Berchie alleged Gertie breached her fiduciary duty as trustee when she sold the farm and forgave Calvin's and the Owen trust's notes. Berchie requested an accounting, and imposition of a constructive trust for an undivided interest in the farm and a share of its rents and profits since the sale. The complaint was subsequently amended to join Lester's great-grandson, Charles Miles McCollum, as a plaintiff. Following a hearing on the matter and without comment, the trial court entered an order in favor of Calvin, his wife, Earnestine, and the Owen trust. From that order comes this appeal. Because great-grandson Charles Miles makes no claim or argument separate from that of Berchie, we refer to the appellants as Berchie only for easier reading.

On appeal, Berchie argues that Gertie's action in divesting the Martial Trust of its primary asset was fraud *per se*, and constituted self-dealing and a repudiation of the trust. Berchie criticizes Gertie's sale of the farm for $400,000, which he contends was an inadequate price. He asserts Gertie sold the farm to Earnestine because Gertie lived with Earnestine and Earnestine exercised undue influence over Gertie. Further, Berchie argues that because the appellees knew of Gertie's breach, Earnestine, as executor of Gertie's will, attempted to conceal the fact that their notes and mortgages had been forgiven by filing a delayed inventory of Gertie's property. Berchie's arguments are without merit.

As the appellees note, Berchie was aware of every transaction concerning the trust and farm as it occurred either by actual knowledge in his position as co-executor of Lester's estate or by constructive knowledge because each deed and mortgage had been duly recorded. Of particular note, Berchie testified that he was present when Gertie sold the farm for $400,000 to Calvin and Earnestine on July 3, 1989, and he offered no objection. Berchie also was aware on July 3, 1989 that Gertie was forgiving his 1987 loan of $100,000 and that she intended to forgive two of the $100,000 notes signed by Calvin and Earnestine.[2] Berchie

---

[2] Berchie testified that in 1987, Gertie had loaned him $100,000 from the Marital Trust for which he paid only $10,000 in interest. Gertie later forgave Berchie's loan,

now contends that the $400,000 is an inadequate price for the farm, but his contention is baseless. First, we mention the case of *Gregory v. Moose*, 266 Ark. 926, 590 S.W.2d 665 (Ark. App. 1979). In *Gregory*, a trustee was found by the trial court to be in breach of trust for agreeing to sell real estate belonging to the trust for an inadequate price. In reversing, the appellate court noted the broad powers invested in the trustee by the language in the testamentary trust and stated as follows:

> We find the law to be that a trustee holding a power to sell under language used in this case has discretion not only as to whether or not to sell the trust property but as to the mode and terms of the sale as well. Before a sale will be cancelled for inadequate price, the price must be "grossly inadequate," . . . evidenced by "bad faith," or so low as to "shock the conscience of the court."

> * * *

> [G]enerally speaking, a Trustee's duty to his trust and to his beneficiaries in administering the trust is to exercise the care and skill a man of ordinary prudence would exercise in dealing with his own property in the light of the situation existing at the time. The conduct of the Trustee is not to be judged by hindsight knowledge of subsequently developed facts and circumstances.

*Id.* (citations omitted). Further, the *Gregory* court held that it is presumed that a trustee has acted in good faith, and the burden of proof rests upon those who question his actions and seek to establish a breach of trust.

In the present case, the only evidence presented regarding land values showed that between 1991 and 1996, property in the same area as the McCollum farm sold for $268.40 to $1504.80 per acre. Perhaps of more importance, Berchie was one of the co-executors of Lester's estate, and in that capacity he signed an accounting, inventory, and tax form, all setting the value of the farm at $400,000. The IRS accepted that valuation. Clearly, Berchie failed to prove that $400,000 or $1000 per acre was

---

bought his house for $36,000, and then redeeded the house to him, reciting love and affection as consideration. Further, Berchie testified he also knew Gertie made a $100,000 gift to Charles from the Marital Trust.

grossly inadequate or so low as to shock the conscience of the court.

The most compelling reason for sustaining Gertie's sale of the trust property is that Lester's will provided her with the authority to dispose of the farm in the manner she did. Berchie made his arguments below and now on appeal under a claim that he was a beneficiary or contingent beneficiary of the Marital Trust. However, as discussed above, Gertie was the sole beneficiary of the Marital Trust.[3] Had Gertie not made a valid appointment of the remainder of the Marital Trust property, then, and only then, would the Family Trust have come into existence, with Berchie as a contingent remainderman of that trust.

Where a testamentary trust provides in plain and ordinary language that only one beneficiary is named and the trust gives that beneficiary the right to dispose of the property free of the trust in her will, this court will construe the words and sentences in their ordinary sense in order to arrive at the true intention of the testator. *See Fowler v. Hogue*, 276 Ark. 416, 635 S.W.2d 274 (1982). Here, Lester's intent was to provide Gertie with the authority to dispose of the Marital Trust property during her lifetime and upon her death, and she did so. By making the appointment through her will, Gertie prevented the contingent trust, the Family Trust, from being established.

As the appellees point out, unless an exception exists, a case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. *Arkansas Intercollegiate Conf. v. Parnham*, 309 Ark. 170, 828 S.W.2d 828 (1992). Further, one has no standing to raise an issue regarding property in which he has no interest. *Boyle v. A.W.A., Inc.*, 319 Ark. 190, 892 S.W.2d 242 (1995). Neither Berchie nor Charles Miles ever had any legal or equitable interest in the Marital Trust or in its main asset, the farm.

For the reasons discussed, we affirm.

---

[3] Without deciding this case on an argument not made by either party, we note that as both sole trustee and sole beneficiary, Gertie held both the legal and equitable interests of the trust property. Authority supports the merger of the two interests so that the trust terminates. *See* Rest. 2d Trusts § 99(5) and commentary (e); Rest. 2d Trusts § 341; Austin W. Scott et al., The Law of Trusts § 99, at 46-49 (4th ed. 1987).