SECOND INJURY FUND *v.* J & S TRUCKING

CA 00-242                                                30 S.W.3d 112

Court of Appeals of Arkansas
Division IV
Opinion delivered October 25, 2000

*David L. Pake,* for appellant.

*Jerry D. Pruitt,* for appellee.

SAM BIRD, Judge. The Second Injury Fund appeals a decision of the Workers' Compensation Commission that: (1) held that it had failed to properly preserve for appeal the issue of the contempt penalty imposed by the administrative law judge on appellee J & S Trucking for failing to comply with a previous order; and (2) affirmed the law judge's action in holding the Fund liable for the claimant's fifteen-percent wage–loss–disability benefits. On appeal, the Second Injury Fund argues that it properly preserved for appeal the issue of the contempt assessment; that the claimant did not have the combination of disabilities or impairments necessary to invoke Second Injury Fund liability; and that it was error for the Commission to hold the Fund liable for wage–loss benefits when the employer was not insured at the time of the injury and had not paid any of the benefits it was ordered to pay in a previous Commission decision. We affirm the decision of the Commission.

■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence. *Clark v. Peabody Testing Serv.,* 265 Ark. 489, 579 S.W.2d 360 (1979); *Boyd v. Dana Corp.,* 62 Ark. App. 78, 966 S.W.2d 946 (1998); *Express Human Resources III v. Terry,* 61 Ark. App. 258, 968 S.W.2d 630 (1998). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Weaver v. Whitaker Furniture Co.,* 55 Ark. App. 400, 935 S.W.2d 584 (1996); *Wright v. ABC Air, Inc.,* 44 Ark. App. 5, 864 S.W.2d 871 (1993). The issue is not whether the appellate court might have reached a different conclusion from the

one found by the Commission, or even whether the evidence would have supported a contrary finding, but if reasonable minds could arrive at the same decision as the Commission, the decision must be upheld. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996).

The claimant, Dennis Watson, who is in his fifties, finished high school, earned some college credits, is a Viet Nam veteran with a service-connected disability of twenty percent, and has worked mainly in the trucking industry as a driver, dispatcher, and supervisor. He sustained a work-related injury on June 2, 1995, while stacking twelve-packs of Pepsi in the course and scope of his employment with J & S Trucking. Dr. Tom E. Cheyne, of the Holt-Krock Clinic in Fort Smith, treated Watson for a lumbar strain. An August 14, 1995 bone scan was normal and a September 21, 1995 lumbar MRI showed a small central disc bulge at L5-S1. Dr. Nils K. Axelsen, also of the Holt-Krock Clinic, to whom Dr. Cheyne had referred Watson, reported that he did not think the bulging disc was causing Watson any significant problems. Dr. Cheyne released Watson to return to work on October 12, 1995, with a five-percent anatomical-impairment rating, a twenty-pound weight restriction, and no repetitive bending, lifting, or twisting.

Watson had a previous back injury on March 14, 1988, that was not work related. It resulted in a herniated disc that required surgical repair, but he went back to work at his same job three months later and continued to work for that company for four more years. Since 1988, Watson has had periodic episodes of back pain, particularly after strenuous work. Following the 1995 injury, Watson was unable to return to work for J & S Trucking because they did not have a job for him that would be within his physical restrictions. Watson was unable to find work in the trucking industry and eventually went into business for himself doing yard work and repairing boat motors. At the time of his 1995 injury, Watson was making an average weekly wage of $349. In 1995, Watson's adjusted gross income, according to his Form 1040, was $10,014; in 1996, it was $4,831; and in 1997, his income was $7,507.

The Workers' Compensation Commission determined that Watson had suffered a wage-loss disability of fifteen percent due to the combination of his 1988 and 1995 injuries. The Second Injury

Fund's first argument is that Watson had no lasting physical problems that affected his ability to work from either his service-connected disability or his 1988 back injury and subsequent surgery. It contends that: Watson was never placed on any physical restrictions after his 1988 back surgery; he had no back problems that could not be attributed to a specific incident from which he completely recovered; he wore no back brace; a 1993 myelogram was normal; Watson never lost a job because of his physical inability to perform; Watson testified that he considered all his pre-1995 restrictions temporary; a physical examination conducted on April 10, 1994, to determine Watson's qualification for retaining his commercial driver's license noted no permanent defects from any illness, disease, or injury; and, while working for J & S Trucking, Watson was loading and unloading his own truck. Thus, the Second Injury Fund maintains that Watson's current restrictions are entirely the result of his June 2, 1995 injury.

Appellee Watson counters this argument by noting the number of times between his surgery in 1988 and his injury in 1995 that he had to return to the doctor because of back pain. On physical examination at those visits, Watson was found to have a positive straight leg raise, range of motion was decreased, muscle spasms were noted, and he was diagnosed with lumbar radiculitis on the left side.

■ In addition, Dr. Albert D. MacDade, a neurosurgeon, performed an independent medical examination on Watson. His report stated in part:

> NEUROLOGICAL EXAM: A focused neurological examination shows ... [t]here is a toe drop on the left that is quite substantial –3 weakness is present. The extensor digitorum brevis on the left is atrophied. There is L5 hypalgesia on the left.
>
> ....
>
> He has hard neurological findings. He denies any toe extensor weakness that he had noted prior to the 06-02-95 mishap, but review of the old records indicates that he had a substantial L5 radiculopathy on the left with marked weakness of the left toe dorsi flexors, and evertors, on Dr. Barry's examination of 03-14-88. Judging from this, I would deduce that the atrophy of the extensor digitorum brevis and toedrop on the left are probably old. The pain is new since his 06-02-95 event.

> I am persuaded that his pain relates to the new accident of 06-02-95, but his neurologic findings relate dominantly to the old injury of the nerve root detected back in 1988 that happened about the time of his lumbar discectomy by Dr. Alberty.

Dr. MacDade's report alone constitutes substantial evidence to support the Commission's finding that Watson's current disability was the result of the combination of the two injuries.

For its second point on appeal, the Second Injury Fund argues that the Commission erred in holding that it did not properly preserve the contempt issue for review. The administrative law judge had found J & S Trucking in contempt for failing to pay any of a previous award of temporary total disability benefits, costs of medical treatment, and a five-percent anatomical impairment rating. The judge fined the employer $500, and ordered the fine paid to the Second Injury Fund. The Second Injury Fund does not argue that the fine should not have been imposed against J & S, but it argues that the administrative law judge should not have ordered that the fine be paid to the Second Injury Fund. The Commission stated in its opinion that the issue was not raised on appeal by the Second Injury Fund, the party who filed the notice of appeal, and that J & S Trucking, against whom the fine was levied, did not file a cross-appeal.

From our review of the record, it appears that the question is not whether the Second Injury Fund properly preserved the issue for appeal to the Commission, but whether the Second Injury Fund had standing to appeal the contempt issue where, as here, the fine was not levied against it, and where, as here, the proceeds of the fine were ordered to be paid to the Fund.[1]

Before a party can raise an issue on appeal, it must demonstrate that it has been adversely affected or aggrieved by the action of the administrative agency. The injury must be concrete, specific,

---

[1] We are aware that the Commission modified the decision of the administrative law judge by directing that the proceeds of the fine be paid to the Clerk of the Workers' Compensation Commission for deposit into the Commission's "administrative account" instead of into the Second Injury Fund. However, since the Fund's argument before the Commission was that the proceeds of the fine should *not* be paid to it, we fail to see how the Fund has standing to contest the Commission's decision *not* to pay the proceeds of the fine to it. Therefore, we decline to address the Fund's further argument that the proceeds of the fine should have been paid into the Death and Permanent Total Disability Trust Fund.

real, and immediate, rather than conjectural or hypothetical. *Estes v. Walters*, 269 Ark. 891, 601 S.W.2d 252 (Ark. App. 1980). A party has no standing to raise an issue regarding property in which he has no interest. *Nash v. Estate of Swaffer*, 336 Ark. 235, 983 S.W.2d 942 (1999); *McCollum v. McCollum*, 328 Ark. 607, 946 S.W.2d 181 (1997). *See also Etoch v. State*, 332 Ark. 83, 964 S.W.2d 798 (1998) (appellant lacked standing to raise a particular issue on appeal because he could not demonstrate that the granting of a motion of the State for a mistrial adversely impacted him).

■ ■ We are simply unable to see how the Second Injury Fund has been damaged in any way by the finding of contempt and the assessment of a fine against J & S Trucking. Furthermore, since the gravamen of the Fund's complaint is that the administrative law judge ordered the fine paid into the Second Injury Fund, it cannot now complain that the Commission modified the administrative law judge's decision by directing that the fine be deposited elsewhere.

Finally, the Second Injury Fund argues that it was error to hold that the claimant could draw wage-loss disability from the Fund because the employer was uninsured and had not paid the three-percent premium tax on workers' compensation insurance that constitutes the funding for the Second Injury Fund. The Commission stated that the relationship between the claimant and the Second Injury Fund exists without reference to the employer and, therefore, the employer's omission in not carrying workers' compensation insurance, is irrelevant to the determination of whether the Fund has liability in a particular case.

Arkansas Code Annotated section 11-9-525(a)(1) (Repl. 1996) provides in pertinent part:

> The Second Injury Fund established in this Chapter is a special fund designed to ensure that an employer employing a handicapped worker will not ... be held liable for a greater disability or impairment than actually occurred while the worker was in his employment.

The Fund argues that unless the employer has paid into the pool, it is not a member of the pool, and it cannot shift its liability for an injury to the Second Injury pool. According to the Fund, it is unfair to the contributing employers to make the Fund pay the

liability of a non-contributing non-member employer. However, as argued by appellee, Ark. Code Ann. § 11-9-525(a)(2) states: "*The employee is to be fully protected* in that the fund pays the worker the difference between the employer's liability and the balance of his disability or impairment which results from all disabilities or impairments combined."

■ J & S Trucking also counters the Fund's argument that it had not contributed any money to the Fund. It asserts that from 1981 until 1993, it carried workers' compensation insurance and presumably contributed the required tax to the Fund. Therefore, the Fund's argument that imposing liability for Watson's wage-loss disability on it would be unfair loses its validity. Furthermore, the Second Injury Fund statute (Ark. Code Ann. § 11-9-525) makes no mention of uninsured employers, and the statute regarding an employer's liability for compensation (Ark. Code Ann. § 11-9-401 (Repl. 1996)) makes no mention of the Second Injury Fund. There is nothing in these statutes to indicate that an injured worker should be penalized or the Second Injury Fund should be relieved of liability that it was created to cover simply because the particular employer did not carry workers' compensation insurance.

Affirmed.

KOONCE and ROAF, JJ., agree.